```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
GABOR PRESSER,                                   :
                                                 :
                Plaintiff,                       :     16-CV-3798
                                                 :
        -against-                                :
                                                 :
                                                 :     COMPLAINT
KANYE WEST,                                      :     AND JURY DEMAND
PLEASE GIMME MY PUBLISHING INC. and              :
SONY/ATV MUSIC PUBLISHING LLC,                   :
                                                 :
                Defendants.                      :
---------------------------------------------------------------x
```

Plaintiff, for his Complaint, alleges upon knowledge as to himself and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff Gabor Presser seeks injunctive relief and money damages for copyright infringement, among other claims, in this action.

2.      Defendants continue to enjoy the financial and other rewards resulting from the phenomenally successful *Yeezus* album, which in turn owes much of its success to the breakout single entitled *New Slaves*.

3.      Approximately one-third of *New Slaves*, however, consists of the unauthorized reproduction of Plaintiff's original work, *Gyongyhaju Lany*, a composition from 1969 that is one of the most beloved pop songs ever in Hungary and across Eastern Europe.

4.      Defendant Kanye West knowingly and intentionally misappropriated Plaintiff's composition for use in *New Slaves*.  After his theft was discovered, Defendants refused to deal fairly with Plaintiff.

5.      To the contrary, Plaintiff declined to sign the draft license agreement that Defendants prepared because it failed to address material issues that Plaintiff raised.

6. Defendants – some of the largest and most powerful players in the music industry – have been trying to bully Plaintiff into submission by claiming that they have a contract with him and that he has no further rights.

7. The best evidence that Defendants' claims are false is their own conduct. Although they claim to have a license from Plaintiff, Defendants have failed to provide any payments or accountings thereunder for more than two years (other than a pretextual "advance" of $10,000, which Plaintiff rejected).

8. Defendants will continue to infringe Defendants' copyright without the intervention of this Court.

## THE PARTIES

9. Plaintiff Gabor Presser is a Hungarian citizen residing in Budapest. Presser is a living legend in his homeland, and *Gyongyhaju Lany* (the "Original Composition") has been one of the most beloved and enduring songs in Hungary and across Eastern Europe since Presser wrote it in 1969.

10. Defendant Kanye West is a United States citizen residing in Los Angeles, California. West is a famous musician and performer.

11. Defendant Please Gimme My Publishing Inc. is a New York corporation with an address at 1330 Avenue of the Americas, 15th Floor, New York, New York 10019.

12. Defendant Sony/ATV Music Publishing LLC is a Delaware limited liability company with an address at 550 Madison Avenue, New York, New York 10022.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Alternatively, 28 U.S.C. § 1332(a)(2) confers subject matter jurisdiction on this Court.

14. This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of New York and in this judicial district and the acts of infringement complained of herein occurred in the State of New York and in this judicial district, among other places.

15. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a).

## FACTS COMMON TO ALL CLAIMS

16. Plaintiff Gabor Presser ("Presser") is the composer of *Gyongyhaju Lany* (the "Original Composition"). Presser has registered the Original Composition with the United States Copyright Office.

17. Defendant Kanye West ("West") misappropriated a substantial portion of the Original Composition for use in *New Slaves* (the "New Composition").

18. Fully one-third (1:25 of 4:16) of the New Composition consists of the Original Composition.[1]

19. West did not seek Presser's permission prior to recording and releasing the New Composition.

---

[1] *See, e.g.,* https://vimeo.com/66580746; https://www.youtube.com/watch?v=IyOL-f_UO5k

20. For example, on May 17, 2013, West caused the New Composition to be performed in video projections on buildings in 66 major cities in North America, Europe and Australia in a massive promotional scheme built in large part on Presser's work and creativity.

21. For the video projection performance in this District, *see* https://vimeo.com/66580746.

22. Presser, who resides in Hungary, had no inkling that West was using his work until he heard from West's attorney who, in an email to Presser dated May 22, 2013 (five days after West released the video projections), asserted that West "would like to work out a deal with you as soon as possible."

23. West's attorneys exerted extraordinary time pressure on Presser, demanding on May 23, 2013 – just one day after he learned of the misappropriation of his work – that Presser enter into a license within 24 hours. West's attorneys were apparently concerned about the upcoming video projection performances of the New Composition scheduled for May 24, 2013.

24. On that date, West's attorney asked Plaintiff's counsel "would it be possible for Kanye to proceed with his plan for the weekend with Gabor's approval … with the understanding that Kanye will make no further use of your client's work in any manner (including no use on albums or otherwise) until we have come to a mutual agreement as to the sample clearance terms."

25. Presser's Hungarian attorney responded promptly, saying that her client "do[es] not want to jeopardize your work over the weekend, but in order to properly assess your offer we would like to know what your plans are with the song 'New Slaves' in the future."

26. West never shared that information with Presser, nor did West address the numerous and fundamental questions that Presser's counsel asked over the following months.

27.     Rather than negotiate in good faith for the use of Presser's work, West's attorneys sent him a $10,000 "advance" and insisted that Presser was therefore obligated to consent to West's unlawful use of the Original Composition.  Presser did not take possession of the "advance," which was sent to, and is currently held by, his Hungarian attorneys.

28.     West and Presser never came to terms.  Although the parties exchanged numerous emails until as recently as March 2016, they never entered into an enforceable license agreement for West for the Original Composition.

29.     To the contrary, West caused a proposed License Agreement to be delivered to Presser on January 6, 2014 (the "Unsigned Draft").  Presser declined to sign the Unsigned Draft because he had certain fundamental questions, including but not limited to the Limitation of Rights (Section 14) therein.  The Unsigned Draft also did not address any use of the New Composition outside the United States, an issue that Presser raised repeatedly.  More than two years later, Presser's questions remain unanswered.

30.     To the extent that West claims that the Unsigned Draft is an enforceable agreement, Defendants have been in breach of that supposed agreement from its alleged inception.

31.     For example, the Unsigned Draft provides for Presser to be paid mechanical royalties and a share of advertising revenues generated by YouTube views of the New Composition.  But despite Presser's repeated requests, Defendants have refused to provide any accountings or payments in connection with these items.

32.     Despite Defendants' concerted effort to conceal the facts from Presser, it is obvious that the New Composition has been extraordinarily lucrative for West.

33. The New Composition was the breakout hit on West's *Yeezus* album, as evidenced by the two weekends of the video projections and the extremely positive critical response to the New Composition.[2]

34. The *Yeezus* CD "shipped platinum," meaning more than 1,000,000 units were produced, yet Defendants have failed to account to Presser for any mechanical royalties.

35. Thereafter, West performed more than 40 live concerts between October 2013 and September 2014 in support of *Yeezus*. Each one of these concerts prominently featured the New Composition. The tour generated approximately $35 million in ticket sales alone, plus substantial additional revenues from merchandise sales.

36. The New Composition has been viewed millions of times on YouTube, but Defendants have failed to account for any revenues that would be due under their alleged agreement with Presser.

37. The foregoing is not intended to be a comprehensive recitation of Presser's damages, which can only be determined with information in Defendants' possession. Defendants have declined to provide *any* accountings or payments to Presser, thereby requiring the intervention of this Court and the application of the applicable provisions of the Copyright Act.

**COUNT ONE: COPYRIGHT INFRINGEMENT**

38. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

---

[2] *See, e.g.,* http://www.nydailynews.com/entertainment/music-arts/five-star-review-kanye-west-yeezus-rocks-raps-article-1.1373220 (noting that the Old Composition is "the most cool" sample on the entire *Yeezus* album).

39. Defendants have infringed Plaintiff's copyright in the Original Composition in violation of sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

40. Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

41. As a direct and proximate result of said infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

42. Plaintiff is also entitled to Defendants' profits attributable to the infringements, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

43. Plaintiff further is entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

44. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in the Original Composition. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT TWO: BREACH OF CONTRACT

45. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

46. Plaintiff denies that he agreed to any enforceable license pursuant to which Defendants were authorized to use the Original Composition.

47. In the unlikely event that the Court determines that such an agreement exists, however, it is subject to rescission by this Court due to Defendants' numerous breaches from the date of its alleged commencement, including but not limited to Defendants' failure to provide any payments or accountings to Plaintiff.

## JURY DEMAND

48. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff respectfully requests an Order of this Court for:

A. damages in an amount to be determined at trial but not less than $2,500,000;

B. an accounting of, and the imposition of constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiff's copyright in the Original Composition;

C. a preliminary and permanent injunction prohibiting Defendants and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiff's copyright in the Original Composition;

D. Plaintiff's attorneys' fees, costs and disbursements in this action; and

E. such other and further relief as to the Court deems just and proper.

Dated: New York, New York  
       May 19, 2016

CANELAW LLP

_____  
Peter S. Cane  
Sarah E. Coleman

200 Park Avenue  
17th Floor  
New York, New York 10166  
212-627-7000

*Attorneys for Plaintiff*