UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GABOR PRESSER,

Plaintiff,

-against-

KANYE WEST, PLEASE GIMME MY PUBLISHING INC. and SONY/ATV MUSIC PUBLISHING LLC,

Defendants.

16-CV-03798

**MEMORANDUM OF LAW OF DEFENDANTS KANYE WEST, PLEASE GIMME MY PUBLISHING, INC., AND SONY/ATV MUSIC PUBLISHING LLC IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT AND TO TRANSFER VENUE**

PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100
*Attorneys for Defendants KANYE WEST, PLEASE GIMME MY PUBLISHING, INC., and SONY/ATV MUSIC PUBLISHING LLC*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ........................................................................................................3

ARGUMENT ............................................................................................................................4

A. Standard on a Motion to Dismiss ...................................................................4

B. The Complaint Fails to State a Claim for Copyright Infringement ........................6

1. Pleading Standard for a Copyright Infringement Claim ...............................6

2. Presser Fails to Adequately Allege That He Has Registered a Copyright ..........................................................................................7

3. Presser Fails to Allege That He Owns a Copyright Under the 1909 Act...............................................................................................8

C. The Court Should Transfer the Action to the Central District of California ...........9

1. Standard for a Motion to Transfer Venue ...................................................9

2. The Court Should Transfer the Action.....................................................10

to the Central District of California .............................................................10

(a) This Action Could Have Been Filed in California..........................10

(b) The Venue Factors Weigh in Favor of a Transfer to California ....................................................................................10

(i) Convenience of the Witnesses ..........................................10

(ii) Convenience of the Parties...............................................12

(iii) Location of Relevant Documents and ................................13

Relative Ease of Access to Sources of Proof ................................13

(iv) Weight Accorded to Plaintiff's Choice ..............................13

of Forum and Locus of Operative Facts .......................................13

(v) Availability of Process to Compel ....................................14

Attendance of Unwilling Witnesses...............................................14

**(vi)** The Comparative Familiarity of........................................14

Each District with the Governing Law ..........................................14

**(vii)** Relative Means of the Parties ...........................................15

**(viii)** Judicial Economy and the Interests of Justice ...................15

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 4, 5

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868678 (2009) .......... 5

*Atl. Recording Corp. v. Project Playlist, Inc.,*
603 F. Supp. 2d 690 (S.D.N.Y. 2009) .......... 9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 4

*Broder v. Cablevision Sys.Corp.,*
418 F.3d 187 (2d Cir. 2005) .......... 5

*Caldwell v. Slip-N-Slide Records, Inc.,*
No. 10 Civ. 9106(JFK), 2011 WL 3251502 (S.D.N.Y. July 26, 2011) .......... *passim*

*In re Cuyahoga Equip. Corp.,*
980 F.2d 110 (2d Cir.1992) .......... 9

*DiFolco v. MSNBC Cable L.L.C.,*
622 F.3d 104 (2d Cir. 2010) .......... 4, 5

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
837 F. Supp. 2d 162 (S.D.N.Y. 2011) .......... 5

*EQT Infrastructure Ltd. v. Smith,*
861 F. Supp. 2d 220 (S.D.N.Y. 2012) .......... 5

*ESPN, Inc. v. Quiksilver, Inc.,*
581 F. Supp. 2d 542 (S.D.N.Y. 2008) .......... 13

*Film Chest Media Group, Inc. v. Hyde,*
No. 14 Civ. 0368(LAK)(AJP), 2014 WL 6791534 (S.D.N.Y. Oct. 21, 2014) .......... 8

*Fleurimond v. New York Univ.,*
722 F. Supp. 2d 352 (E.D.N.Y. 2010) .......... 6

*Frame v. Whole Foods Market, Inc.,*
No. 06 Civ. 7058(DAB), 2007 WL 2815613 (S.D.N.Y. Sept. 24, 2007) .......... 9

*Home & Nature, Inc. v. Sherman Specialty Co.,*
322 F. Supp. 2d 260 (E.D.N.Y. 2004) .......... 6, 7

*Millennium, L.P. v. Hyland Software, Inc.,*
No. 03 Civ. 3900(DC), 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) .......... 13

**CASES** **PAGE(s)**

*Oppenheimer & Co. v. Trans Energy, Inc.*,
946 F. Supp. 2d 343 (S.D.N.Y. 2013)....................5

*Psihoyos v. John Wiley & Sons, Inc.*,
748 F.3d 120 (2d Cir. 2014)....................6, 7

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010)....................6

*Stewart v. Abend*,
495 U.S. 207 (1990)....................8

*United Merch. Wholesale, Inc. v. IFFCO, Inc.*,
No. 13-CV-4259 (ADS) (ARL), 2014 WL 4639138 (E.D.N.Y. Sept. 15, 2014)....................5

*Wu v. John Wiley & Sons, Inc.*,
No. 14 Civ. 6746 (AKH)(AJP), 2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015)....................7

**STATUTORY AUTHORITIES**

Copyright Act of March 4, 1909....................8, 9

17 U.S.C. § 10....................8

17 U.S.C. § 301(a)(2)....................8

17 U.S.C. § 411 (a)....................1, 6, 7, 9

28 U.S.C. § 1400(a)....................10

28 U.S.C. § 1404(a)....................1, 9

**RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(6)....................1, 4, 5, 9

**TREATISES**

2 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 7.02[C][1] (1989)....................8

Defendants Kanye West, Please Gimme My Publishing, Inc., and Sony/ATV Music Publishing LLC ("SATV") ("Defendants") move to dismiss Count One of Plaintiff's Complaint for alleged copyright infringement for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and to transfer venue to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

Registration of a U.S. federal copyright is a prerequisite to filing a claim for copyright infringement. Here, Plaintiff fails to allege facts that establish that Plaintiff owns a copyright in the alleged musical composition at issue. Indeed, Plaintiff fails to allege *any* details regarding the supposed registration. The U.S. Copyright Office has no record of any registration for Plaintiff's composition. The only *application* for a registration was filed in 2013, over three years ago. Plaintiff does not have a registration and cannot maintain an action for infringement pursuant to 17 U.S.C. § 411(a).

Furthermore, Plaintiff's song, *Gyongyhaju Lany*, was created in 1969 and hence is governed by the 1909 Copyright Act. To secure a copyright under the 1909 Act, a musical composition must be published in written form with proper copyright notice affixed and *then* registered. (By contrast, under the 1976 Copyright Act, copyright vests at the moment of creation, regardless of registration.) Registration alone does not secure a copyright (and no actual copyright registration has been alleged here). Plaintiff does not allege that he published his song with proper notice affixed or any other facts that establish a valid copyright under the 1909 Act. The infringement claim should be dismissed.

The Court also should transfer this action to the Central District of California. Defendants' primary defense to infringement (Count One) is that Mr. West licensed *Gyongyhaju Lany* from

Plaintiff for use in *New Slaves*. Plaintiff sues in the alternative for breach of contract (Count Two). Yet all U.S.-based negotiations and communications regarding the contract at issue herein occurred in California.

More specifically, representatives for Defendant Kanye West and Plaintiff negotiated and agreed upon all material terms of the license agreement at issue herein, pursuant to which Plaintiff agreed to allow Mr. West to use portions of Plaintiff's song, *Gyongyhaju Lanyi,* in Mr. West's song *New Slaves*. The license agreement, which Plaintiff denies is enforceable, was the result of lengthy negotiations between Plaintiff, in Hungary, and his attorney in Hungary, and Mr. West's attorney in Los Angeles. A related ringtone license agreement for *New Slaves* was negotiated and executed between Plaintiff and his attorney in Hungary and Mr. West's record company in Los Angeles. Another related, and fully executed, license to use *New Slaves* for a television show arose out of negotiations between Plaintiff's lawyer in Hungary and a television production company in Los Angeles. As Plaintiff alleges in his Complaint, Mr. West resides in Los Angeles.

These three licenses were the result of negotiations with persons in Los Angeles, are at the core of this dispute, and fully evidence that any use of Plaintiff's song in *New Slaves* was authorized by the Plaintiff. No claim for infringement can lie, and if any claim is permitted to proceed, it should be litigated in Los Angeles, California.

The events at issue occurred in Los Angeles, California, and Hungary. All material witnesses are also located in Los Angeles, California and Hungary. New York has no meaningful connection to the dispute. Los Angeles is the most convenient forum for this litigation. The Court should transfer venue to the Central District of California. [1]

---

[1] A copy of the Complaint is annexed hereto as Exhibit 1.

**STATEMENT OF FACTS**

Plaintiff Gabor Presser ("Plaintiff" or "Presser") alleges that he is a Hungarian citizen residing in Budapest. Presser claims that he is the composer of the song, *Gyongyhaju Lany* (the "Plaintiff's Composition"), which he claims to have written in 1969. (Complaint, ¶¶ 9, 16.)

Presser alleges that he "has registered the [Plaintiff's] Composition with the United States Copyright Office." (*Id.*, ¶ 16.) No details evidencing any supposed registration are alleged, including no registration date, number, or any facts evidencing a copyright registration. (*See id.*)

Presser alleges that Defendant Kanye West ("Mr. West") "is a famous musician and performer." (*Id.*, ¶ 10.) Presser alleges that, without permission from Presser, Mr. West allegedly "misappropriated a substantial portion of the [Plaintiff's] Composition" in Mr. West's song, *New Slaves* (the "Defendants' Composition"), which appeared on Mr. West's successful *Yeezus* album. (*Id.*, ¶¶ 2-5, 17-19, 33-34.)

Presser alleges *inter alia* that, "on May 17, 2013, Mr. West caused the [Defendants'] Composition to be performed in video projections on buildings in 66 major cities in North America, Europe, and Australia … ." (*Id.*, ¶ 20.)

Presser admits in the Complaint that the parties engaged in lengthy negotiations regarding a license for the use of Plaintiff's Composition in Defendants' Composition. In particular, Presser claims that, between May 21, 2013, and March 2016, "West's attorney" corresponded by email with Presser and "Presser's Hungarian attorney" regarding acquiring a license from Presser to use Plaintiff's Composition in Defendants' Composition. Presser admits that "West's attorneys" sent Presser a $10,000 advance payment on the license, which is in the possession of Presser's Hungarian attorney. (*Id.*, ¶¶ 20-27.) Presser further alleges that, on January 6, 2014, "West caused a proposed License Agreement to be delivered to Presser, which Presser declined to sign (the "Unsigned

Draft"), and that Presser had certain questions about the Unsigned Draft that Mr. West allegedly never answered. (*Id.*, ¶ 29.)

While Presser denies that the parties entered into an enforceable agreement, he nevertheless sues for breach of the license agreement.[1] Presser alleges in Count Two that, to the extent the Unsigned Draft is an enforceable agreement, Defendants have been in breach since its inception, including by failing to pay royalties to Presser. (*Id.*, ¶¶ 28, 30-31.)

Presser asserts claims for copyright infringement (Count One) and breach of contract (Count Two), seeking *inter alia* damages and injunctive relief. (*Id.*, ¶¶ 38-47, prayer.)

The Copyright Office has no record of a copyright registration for the Plaintiff's Composition. Defendants' own investigation reveals that Presser and his co-author may have filed an application for a registration three years ago in August 2013, but no registration was ever issued. (Declaration of Seth Miller ("Miller Decl"), Exh. A.)

## ARGUMENT

### A. Standard on a Motion to Dismiss

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed.R.Civ.P 12(b)(6). In ruling on a motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

> [The court is] constrained, however, to ascertain that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, a complaint is not required

[1] Defendants submit that discovery will show that all material terms of the license agreement were agreed upon, as evidenced by communications between the parties and the two other agreements executed by Plaintiff and third parties that incorporated these material terms.

> to have "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (internal quotation marks omitted). In its formulation of the *Twombly-Iqbal* requirements for a statement of claim, the Supreme Court has established the following order to be followed in determining whether the pleading is adequate: "When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950 (emphasis supplied).

*DiFolco*, 622 F.3d at 110-111.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 179 (S.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

> [A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

*EQT Infrastructure Ltd. v. Smith,* 861 F. Supp. 2d 220, 225-26 (S.D.N.Y. 2012) (internal & external citations omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint … and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111 (citation omitted). In particular, "[w]here the claim is for breach of contract, ... the complaint is deemed to incorporate the alleged contract by reference because the alleged contract is integral to the claim." *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 344 (S.D.N.Y. 2013) (citing *Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 196 (2d Cir. 2005)); *United Merch. Wholesale, Inc. v. IFFCO, Inc.*, No. 13-CV-4259 (ADS) (ARL), 2014 WL 4639138, at *2 (E.D.N.Y. Sept. 15, 2014).

## B. The Complaint Fails to State a Claim for Copyright Infringement

### 1. Pleading Standard for a Copyright Infringement Claim

> At the pleading stage, a plaintiff asserting a copyright infringement claim must allege: (1) the specific work that forms the subject of her claim; (2) the acts and time that the defendant infringed the copyright; (3) that the copyright at issue has been registered pursuant to the Copyright Act; and (4) that she owns the copyright.

*Fleurimond v. New York Univ.*, 722 F. Supp. 2d 352, 354 (E.D.N.Y. 2010) (citing cases).

A plaintiff may satisfy the first element (identifying the work) "[b]y listing the copyright registration numbers issued by the United States that correspond to [the work], annexing copies of the United States Certificates of Copyright Registration, and stating that the defendant has infringed upon one or more of these copyrights . . ." *Home & Nature, Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004). A plaintiff may satisfy the third element (alleging registration) by alleging that the plaintiff "has 'duly and legally complied in all respect with the provisions of the Copyrights Law of the United States,'" including annexing copies of the Certificates of Copyright Registration. *Id.*

Registering a copyright with the U.S. Copyright Office is a statutory prerequisite to filing an action for copyright infringement. 17 U.S.C. § 411 (a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) ("[s]ubject to certain exceptions, the Copyright Act … requires copyright holders to register their works before suing for copyright infringement") (citing 17 U.S.C. § 411(a)).

As the Second Circuit has noted, "the Federal Courts of Appeals are divided over whether a pending application satisfies § 411(a)'s requirement of copyright registration as a precondition to instituting an infringement action." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014)(citing cases). The Second Circuit has not weighed in on this issue yet. *Id.* (holding that the

plaintiff failed to comply with registration requirement when he had not even applied for a registration until after discovery had closed). When a plaintiff files an infringement suit before registering the copyright, district courts have discretion to allow the plaintiff to amend the complaint once the plaintiff obtains a registration after the suit's initiation. *Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746 (AKH)(AJP), 2015 WL 5254885, at *9 (S.D.N.Y. Sept. 10, 2015) (citing cases).

### 2. Presser Fails to Adequately Allege That He Has Registered a Copyright

Here, Presser's sole allegation of ownership and registration is as follows: "Presser has registered the Plaintiff's Composition with the United States Copyright Office." (Complaint, ¶ 16.) However, Presser has not alleged the registration number or date of registration and fails to attach the Certificate of Registration to his Complaint (if any exists). *Home & Nature Inc.*, 322 F. Supp. 2d at 266. There is no indication that any registration was actually obtained. At most, an application to register a copyright was filed three years ago in 2013 by Presser and his co-author, but apparently has not been approved by the Copyright Office (and likely will never be). (Miller Decl, Exh. A.)

Presser cannot pursue an infringement claim without a registration. 17 U.S.C. § 411(a).[2] Defendants should not be required to litigate an action where the Plaintiff is unable to allege that he in fact registered a copyright. Accordingly, the Court should dismiss Count One for failure to state a claim and failure to satisfy the statutory prerequisite to filing an infringement claim.

---

[2] Even assuming, *arguendo*, that the Court agrees with the circuits that hold that a pending application satisfies the registration requirement—an issue as yet undecided in this Circuit, *see Psihoyos*, 748 F.3d at 125—this is not a situation where the plaintiff applied for a registration on or after filing the lawsuit and can amend the complaint shortly after filing the action to attach the registration once it is issued by the Copyright Office, *Wu*, 2015 WL 5254885, at *9. The only evidence of any possible application is from 2013, three years ago. (Miller Decl, Exh. A.) The registration apparently was never issued by the Copyright Office.

### 3. Presser Fails to Allege That He Owns a Copyright Under the 1909 Act

"The Copyright Act of 1909 (the '1909 Act') governs works published prior to the January 1, 1978 effective date of the 1976 Copyright Act (the '1976 Act'), which is non-retroactive." *Film Chest Media Group, Inc. v. Hyde*, No. 14 Civ. 0368(LAK)(AJP), 2014 WL 6791534, at *5 (S.D.N.Y. Oct. 21, 2014) (citations omitted); *see* 17 U.S.C. § 301(a)(2) (effective date of 1976 Act is January 1, 1978). The general rule under the 1909 Act is that publication (*i.e.*, sale or distribution of copies of the work to the public) with proper copyright notice affixed is necessary in order to obtain statutory copyright protection. *Stewart v. Abend*, 495 U.S. 207, 233 (1990).

> Under the 1909 Act, it was necessary to publish the work with proper notice to obtain copyright. Publication of a work without proper notice automatically sent a work into the public domain.

*Id*, (citing 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 7.02[C][1] (1989) and 17 U.S.C. § 10 (1976 ed.)); *Film Media*, 2014 WL 6791534, at *6 ("[u]nder the 1909 Act, the publication of a work, with a proper notice, secured statutory copyright protection")(citing numerous authorities); Copyright Act of March 4, 1909 ("1909 Act"), ch. 320, § 9, 35 Stat. 1075, 1078.[3]

Here, the Plaintiff's Composition was written in 1969 (Complaint, ¶¶ 3, 9) and thus is governed by the 1909 Act. Under the 1909 Act, copyright is obtained by publishing the work with proper copyright notice affixed. *Film Media*, 2014 WL 6791534, at *6; 1909 Act, § 9 ("any person ... may secure copyright for his work *by publication thereof with the notice of copyright required by the Act*")(emphasis added). Presser's sole allegation of copyright ownership is only that he "has registered the [Plaintiff's] Composition with the United States Copyright Office." (Complaint, ¶ 16.) Registration does not secure a copyright under the 1909 Act. *See id.* Presser fails to allege that his 1969 song was published with proper copyright notice affixed (or that an unpublished copy was

[3] For unpublished works, copyright protection could be obtained by registering and depositing a copy of the unpublished work with the Copyright Office. 1909 Act, § 11.

deposited with the U.S. Copyright Office along with his copyright application prior to publication of the 1969 work)—the only two ways to obtain a statutory copyright. 1909 Act, §§ 9, 11. Even if the Court finds that Presser's allegation that he "registered" a copyright satisfies the *claim filing* requirement under 17 U.S.C. § 411 (a), it is not sufficient to show that Presser *owns* a statutory copyright—publication with notice is required. Presser does not and (on information and belief) cannot allege same. *Id.* Count One fails to allege facts that state a claim upon which relief may be granted. Fed.R.Civ.Proc. 12(b)(6).

**C. The Court Should Transfer the Action to the Central District of California**

**1. Standard for a Motion to Transfer Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party has the burden to make a "clear and convincing" showing that transfer is proper. *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009) (citation omitted). Transfer motions "lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *Frame v. Whole Foods Market, Inc.*, No. 06 Civ. 7058 (DAB), 2007 WL 2815613, at *4 (S.D.N.Y. Sept. 24, 2007). (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992)).

> The inquiry on a motion to transfer venue is two-fold. First, the district court must determine whether the case could have been brought in the proposed transferee district. If the court determines that the case could have been originally brought in the proposed transferee district, the court must next balance several factors to determine whether the transfer is appropriate. These factors include: (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice.

*Caldwell v. Slip-N-Slide Records, Inc.*, No. 10 Civ. 9106(JFK), 2011 WL 3251502, at *1 (S.D.N.Y.

July 26, 2011 (citations omitted).

**2. The Court Should Transfer the Action to the Central District of California**

**(a) This Action Could Have Been Filed in California**

Venue in a copyright infringement case lies "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a) . A defendant "may be found" in any district in which he is amenable to personal jurisdiction, *Caldwell*, 2011 WL 3251502, at *2. Here, Mr. West resides in Los Angeles. (Complaint, ¶ 10; Miller Decl, ¶ 3.) Mr. West is subject to personal jurisdiction in the Central District of California;[4] therefore, this action could have been filed in that District. *Id.*; 28 U.S.C. § 1400(a).

**(b) The Venue Factors Weigh in Favor of a Transfer to California**

> When weighing all the factors "[t]here is no rigid formula" and "no single one of them is determinative." ... However, the "weight accorded a plaintiff's forum choice affects the burden that a defendant must meet on the other factors."

*Caldwell*, 2011 WL 3251502, at *2 (citations omitted). Here, the venue factors weigh in favor of a transfer to the Central District of California.

(i) Convenience of the Witnesses

Courts have generally regarded the convenience of party and non-party witnesses as the most important factor in determining whether to grant a motion to transfer venue. *Caldwell*, 2011 WL 3251502, at *3. Here, as set forth below and in the accompanying Miller Declaration and Declaration of Renee Karalian ("Karalian Decl"), the only relevant party, Mr. West, and the material witnesses who reside in the United States are based in Los Angeles, California. Los Angeles, California, is also the location of U.S. negotiations and formation of the license agreement at issue herein (Count Two) which forms a complete defense to the infringement claim (Count One).

[4] The Central District of California includes the City and County of Los Angeles.

> In a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would inconvenienced if the suit were to remain in the forum chosen by plaintiff. 'In order to meet its burden, the motion of the party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony.' Other courts have concluded that "'[w]hen assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.'"

*Caldwell*, 2011 WL 3251502, at *3 (citations omitted).

Here, over a period of over two years, from Spring 2013 through early 2016, Mr. West's then attorney in Los Angeles, Renee Karalian, negotiated with Presser, his Hungarian co-writer Anna Adamis, and their Hungarian attorney, Zsofia Lendvai, all located in Hungary, regarding a license to use the Plaintiff's Composition in the Defendants' Composition—negotiations that resulted in a binding license agreement that bars the claim for copyright infringement (and which license agreement, if it is binding, also forms the basis for Presser's breach of contract claim). (Karalian Decl, ¶ 4, Exh. A.) Ms. Karalian is in Los Angeles. Presser, Ms. Adamis, and Ms. Lendvai reside in in Hungary. The only witness <u>in the United States</u> to the negotiation and formation of the license agreement is Ms. Karalian, and she resides in Los Angeles.

The above license negotiations also involved related communications with Mr. West's record label at Universal Music Group ("UMG"), also located in Los Angeles, California. Pursuant to their communications, Presser and his co-writer signed a ringtone license with UMG for the Defendants' Composition (Karalian Decl, Exh. B), which license echoed the terms of the license agreement at issue and further evidences Presser's agreement to license the Plaintiff's Composition in the Defendants' Composition. UMG's witnesses involved in these negotiations are based in Los Angeles, California. (*Id.*, ¶ 5, Exhs. A-B.)

In addition, in late 2013, Ms. Lendvai negotiated with Bunim-Murray Productions and approved their use of Defendants' Composition in the television show, *Keeping Up With the Kardashians*. This license also echoed the terms of the license agreement at issue. Bunim-Murray productions and its witnesses are based in Los Angeles, California. (*See generally* Miller Decl, ¶¶ 6-11; Karalian Decl, ¶ 7, Exhs. C-D.)

In short, the underlying events concerning whether the parties entered into a license arose in Los Angeles and involve witnesses in Los Angeles (or else witnesses in Hungary). This Court cannot compel any of those witnesses to attend trial in New York. In addition, Mr. West resides in California. The two publishing entity Defendants, PGMPI and SATV, had no significant role in the underlying events, and their testimony likely will be limited to any revenue they collected in administering rights to the Defendants' Composition in regard to alleged damages. (Miller Decl, ¶ 12.)

**(ii)** Convenience of the Parties

"[T]ransfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the non-moving party's inconvenience." *Caldwell*, 2011 WL 3251502, at *3 (citation omitted). Here, Mr. West is in Los Angeles. Presser is in Budapest, Hungary. Mr. West is the principal Defendant. His publishing entity, PGMPI, is based in Los Angeles. (Miller Decl, ¶ 4.) Moreover, PGMPI and SATV merely administer publishing for *New Slaves*, but are not alleged to have had (and indeed had no) meaningful role in the underlying events giving rise to the claim. (*See generally*, Complaint.) Mr. West's inconvenience due to the New York forum will be completely eliminated by a transfer to California, whereas any alleged inconvenience to Presser in Hungary will not be substantially increased by a transfer. *Id.* This factor favors a transfer to the Central District of California.

**(iii)** Location of Relevant Documents and Relative Ease of Access to Sources of Proof

This factor generally is less important in an era of emails and electronic documents, *Caldwell*, 2011 WL 3251502, at *4 (citing *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008)). In copyright infringement cases, the relevant evidence typically comes from the accused infringer, so this factor generally weighs in favor of a transfer to the district where the defendant's documents are kept. *Id.* (citing *Millennium, L.P. v. Hyland Software, Inc.*, No. 03 Civ. 3900 (DC), 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003)). Here, Mr. West is in California, as is Mr. West's former attorney, Renee Karalian, as are UMG and Bunim-Murray. PGMPI and SATV are not particularly significant fact witnesses. PMGPI's principal place of business is in Los Angeles. (Miller Decl, ¶ 4.) This factor weighs in favor of a transfer to California.

**(iv)** Weight Accorded to Plaintiff's Choice of Forum and Locus of Operative Facts

> Generally, the plaintiff's choice of venue is given deference; however, where the chosen forum is not the plaintiff's home forum, the choice is given somewhat less deference. " 'Further, the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state' " and the locus of operative facts underlying the claim. "In an infringement action, one locus of operative facts is the place where the allegedly infringing product was designed and developed." However, "[w]here the nexus of the allegedly infringing activity is in the transferee District, it is insufficient to find a connection to New York based solely on sales of the product that took place here."

*Caldwell*, 2011 WL 3251502, at *2 (citations omitted).

Here, Presser lives in Hungary. New York is not his home forum. New York has no meaningful connection to this dispute other than perhaps his attorney is located in New York. While a video of Defendants' Composition allegedly was projected in New York (Complaint, ¶ 21), the video also was projected in "66 major cities in North America, Europe and Australia" (Complaint, ¶ 20). That minimal exploitation of Defendants' Composition occurred in this District *and in the rest*

*of the United States* does not mitigate in favor of venue here. The locus of operative facts is in Los Angeles where the negotiations at issue took place. This factor weighs in favor of a transfer to California.

(v) Availability of Process to Compel Attendance of Unwilling Witnesses

The non-party witnesses here—Renee Karalian, UMG, Bunim-Murray—are all in Los Angeles. They are the most significant witnesses in the case who reside in the United States because they were involved in negotiations with Presser where he agreed to the use of Plaintiff's Composition in Defendants' Composition, including in a ringtone license and for a television show. The testimony and documents of each of these parties regarding their negotiations with Presser and his Hungarian attorney, Ms. Lendvai, and Presser's approval of a ringtone and television license for Defendants' Composition all are direct and material evidence as to whether there was a binding license agreement with Mr. West that is a defense to infringement and the basis for the breach of contract claim. The negotiations also bear on the value of the license, which is relevant to alleged damages under either a contract or infringement theory of liability. This Court cannot compel these witnesses to attend trial in New York, but a Los Angeles court can compel attendance. This factor weighs in favor of a transfer to the Central District of California.

(vi) The Comparative Familiarity of Each District with the Governing Law

Federal courts are equally familiar with federal copyright law, but this case largely turns on issues of contract formation and defenses thereto with regard to the license agreement between Presser, in Hungary, and Mr. West in California, as represented by a California attorney, which Presser denies is enforceable. California law governs the issues surrounding whether the negotiations in Los Angeles resulted in a binding license agreement for the use of the Plaintiff's

Composition in the Defendants' Composition. The related UMG ringtone agreement that Presser did sign contains a California choice of law provision. (Karalian Decl, Exh. B.) A California District Court is more familiar with California law than this Court. There is no basis to apply New York law to the contract issues in this case. This factor weighs in favor of a transfer.

**(vii)** Relative Means of the Parties

Presser lives in Hungary. He is far from either forum. Relative means is irrelevant, since neither forum is convenient to where he resides—but California is convenient to Mr. West and PGMPI, which are based in California, and SATV does not object to the transfer to California.

**(viii)** Judicial Economy and the Interests of Justice

Mr. West is the primary Defendant. The two publishing entities, SATV and PGMPI, had no significant role in underlying. Mr. West's attorney in California, Renee Karalian, and the employees at UMG and Bunim-Murray in Los Angeles who also negotiated and obtained Presser's agreement for certain uses of the Defendants' Composition are the primary witnesses to the relevant events in this lawsuit.

Judicial economy and efficiency mitigate in favor of a transfer to California. There is no reason to keep this action in New York. The only connection of this forum to the underlying events is that two publishing entities that, for the most part, collect income from Mr. West's song have offices here. (Complaint, 11-12.) "The facts and parties in this case have little to no connection to New York." *Caldwell*, 2011 WL 3251502, at *5 (transferring case to Southern District of Florida). The Court should transfer venue to the Central District of California.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion and dismiss Count One of Plaintiff's Complaint without leave to amend, transfer venue to the United States District Court for the Central District of California, and order such other relief as the Court deems proper.

Dated: New York, New York
November 10, 2016

PRYOR CASHMAN LLP

By: *s/ Ilene S. Farkas*
Brad D. Rose
Ilene S. Farkas
Ross M. Bagley
7 Times Square
New York, New York 10036
(212) 421-4100
*Attorneys for Defendants KANYE WEST, PLEASE GIMME MY PUBLISHING, INC., and SONY/ATV MUSIC PUBLISHING LLC*

TO: By ECF and FEDEX

Peter Cane, Esq.
Sarah Elizabeth Coleman, Esq.
Cane & Associates LLP
200 Park Avenue 17th Floor
New York, NY 10166
(207)-992-6198
Email: peter@canelaw.com
*Attorneys for Plaintiff Gabor Presser*